UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————— X

ZAHID ALIZADA,

                    Plaintiff,                    No. 1:23-cv-05484-CM-OTW

              -against-

ILGAR TALIBOV and DOES 1 through 10,

                    Defendants.

———————————————————————————— X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 8/6/24

DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO VACATE ENTRY OF
DEFAULT AGAINST HIM AND TO ENLARGE HIS TIME TO FILE AN ANSWER

McMahon, J.:

## **Background**

This lawsuit arises from the development of an app, Smartist, which permits artists to post

their work online and potential purchasers to virtually place the artwork to see how it looks in a

space before purchasing it. Compl., ¶16, June 27, 2023. On March 18, 2024, Defendant moved to

vacate the entry of default against him and to enlarge his time to file an answer. Def. Mem. of L.,

1, March 18, 2024. He submitted his proposed answer with his motion.

In keeping with the Second Circuit's expressed desire to have disputes resolved on their

merits, not via default, the motion to vacate the default is GRANTED and the court accepts the

answer.

## I.    **Statement of Facts**

Plaintiff Mr. Zahid Alizada and Defendant Mr. Ilgar Talibov dispute many of the facts and disagree about the existence and nature of a partnership agreement between them for Smartist and the extent of Mr. Alizada's involvement in the development of Smartist.

A. *Mr. Alizada's Version of the Facts*

Mr. Alizada alleged that, in July 2019, Mr. Talibov approached him to form a partnership. Compl., ¶15. Mr. Talibov proposed that he would develop Smartist while Mr. Alizada would finance it. *Id.* Once Smartist launched, the parties would split the operational responsibilities. *Id.* In a later conversation, the parties orally agreed that (1) Mr. Alizada would invest in the business; (2) if the business was successful, the parties would have a 50/50 partnership (each would own 50% of the company and receive 50% of the profits); and (3) if the business was unsuccessful, Mr. Alizada would be responsible for 70% of expenses while Mr. Talibov would be responsible for the remaining 30%. *Id.* at ¶17.

Mr. Alizada affirmed that he "fully performed his obligations pursuant to the Agreement, including funding these early development stages of the Smartist app development" from 2019 until 2020. *Id.* ¶¶ 18-27. In August 2020, Mr. Azliada alleged that Mr. Talibov "inexplicably and without prior notice" decided to end their partnership and remove Mr. Alizada from the development of the app, thus breaching the partnership agreement. *Id.* at ¶28. Discussions to resolve the dispute failed. *Id.* at ¶¶29-33.

B. *Mr. Talibov's Version of the Facts*

Mr. Talibov denied almost all of the facts alleged by Mr. Alizada. Answer, March 18, 2024. Mr. Talibov asserted that Smartist was his idea and the parties never reached an agreement regarding Mr. Alizada's investment or a partnership. Def. Mem. of L., 1, 2. He also denied that

Mr. Alizada contributed "any actual work into the business or developing [Smartist]" beyond his investment of $20,000 in the app. *Id.* at 4.

In the fall of 2019, Mr. Talibov decided to create Smartist and discussed the development of the app with Mr. Alizada. *Id.* at 3. Mr. Alizada agreed to fund the development, but the parties did not discuss an ownership percentage. *Id.* Mr. Talibov searched for agencies that developed apps, but Mr. Alizada refused to fund that pursuit, which cost about $200,000. *Id.* Mr. Talibov then continued to develop the app "on his own." *Id.*

In the spring and early summer of 2020, Mr. Talibov reached out to Mr. Alizada to formalize their relationship. *Id.* at 4. Mr. Talibov denied that Mr. Alizada was his partner, and he did not want to recognize equal ownership with him. *Id.* He wanted to recognize Mr. Alizada's early investment. *Id.* These discussions failed, and Mr. Talibov "considered the relationship over." *Id.* 4-5. Mr. Talibov continued to work on Smartist, which launched in 2021. *Id.* at 5.

## II.    <u>Procedural History</u>

On June 27, 2023, Mr. Alizada filed a Complaint against Mr. Talibov in the Southern District of New York and asserted three claims against Mr. Talibov: (1) breach of contract; (2) unjust enrichment; and (3) fraud, Compl., ¶¶ 36-55, and seeks monetary damages. *Id.* at ¶¶42, 48, 55. For the breach of contract claim, he seeks to recover at least $1,800,000.00, which he alleged reflected the value of his initial investment. *Id.* at ¶42.

Mr. Alizada provided a sworn affidavit from a processor server, who affirmed under penalty of perjury that he attempted to serve in-person the Summons and Complaint upon Mr. Talibov at his Miami residence in July and early August. Pl. Opp'n, Ex. 4, April 1, 2024. Mr. Alizada's process server then posted the Summons and Complaint at Mr. Talibov's residence on

September 6, 2023 and then mailed it to him on September 7, 2023. ECF No. 9, September 25, 2023.

The early attempts at service failed because, in June 2023, Mr. Talibov left the United States to visit his family in Baku for the first time in nine years. Def. Mem. of L., 6. He returned to his residence in Miami on September 25, 2023. *Id.* "After a breather of a day," Mr. Talibov left for California to attend an app promotion summit, which began on September 26, 2023. *Id.* He returned to Miami on October 1, 2023. *Id.*

Assuming arguendo that service was effective, Mr. Talibov's answer was due on September 28, 2023, and he failed to respond by that date. Def. Reply, 1-2, November 27, 2023. On October 23, 2023, Mr. Alizada sought a Clerk's Certificate of Default, which was entered the same day. Def. Mem. of L., 18.

Mr. Alizada alleged that Mr. Talibov was aware of the litigation – or at least, of the possibility of litigation – before he left the country. Pl. Opp'n, 2. On January 4, 2023, Mr. Alizada sent Mr. Talibov a letter, which included a drafted complaint and indicated Mr. Alizada's intent to pursue litigation if the issue regarding the alleged agreement was not resolved. *Id.* at 2; Ex. 1. Mr. Talibov had responded to that letter. *Id.* at 2-3.

Mr. Talibov asserted that he became aware that a lawsuit had been commenced against him once he returned to Miami in October 2023. Def. Mem. of L., 6. On November 28, 2023, Mr. Alizada served a subpoena *duces tecum* on Smartist, Inc. at a New York address listed on the company's website. Pl. Opp'n, Decl. of Barrett, ¶¶8, 11. Mr. Talibov then demanded that Mr. Alizada withdraw the subpoena and the accompanying motion to compel discovery, on the ground that Smartist, Inc. was located in Miami, not New York. *Id.* at ¶12. Mr. Alizada withdrew his

subpoena, and Smartist, Inc. agreed to provide the requested documents. ECF No. 36, April 2, 2024.

Mr. Talibov sent the "documents" to his regular lawyer. *Id.* However, that lawyer handles only intellectual property issues and referred Mr. Talibov to another lawyer, who then referred him to his current counsel. *Id.* Mr. Talibov spoke with his current counsel several times and then signed an engagement letter. *Id.* 6-7. Mr. Talibov's current counsel filed a motion to vacate the default within two weeks of Mr. Talibov's engaging him. *Id.* at 7.

In all, six months passed between Mr. Talibov's return to his residence and the filing of this motion on March 18, 2024.

## Discussion

### I.  Standard for Vacating Entry of Default

The clerk of the court must enter default against a party "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). However, a court can set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). The Second Circuit established three factors for courts to consider when determining whether there is good cause to vacate an entry of default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). Courts can also consider "whether the entry of default would bring about a harsh or unfair result." *Enron*, 10 F.3d at 96.

When determining whether good cause exists, courts must take note of the Second Circuit's preference to resolve disputes on the merits. *Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-CV-

4650 (ER), 2023 WL 4288154, at *5 (S.D.N.Y. June 30, 2023) (citing *Enron*, 10 F.3d at 95)). Accordingly, the "good cause" standard should be liberally construed; "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron*, 10 F.3d at 96.

Ultimately, the decision to vacate an entry of default is left to the sound discretion of the district court. *Id.* at 95.

## II.  <u>The Court Vacates the Entry of Default Against Mr. Talibov</u>

The Court finds good cause to vacate the entry of default against Mr. Talibov. While Talibov arguably "willfully defaulted," in that he did not immediately enter an appearance upon learning that he had been served with papers commencing a lawsuit – which, on the record before this court, occurred in October 2023 – the record reveals that Talibov did not ignore the pendency of this lawsuit during the months prior to the filing of this motion. He responded to a discovery subpoena, produced documents to his regular attorney, and upon learning that that attorney was not qualified to represent him in what is essentially a breach of contract suit, he located new counsel and retained same. That new lawyer moved to vacate the default within two weeks of being retained.

Willfulness "'refer[s] to conduct that is more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'" *Bricklayers & Allied Craftworkers*, 779 F.3d at 186 (citing *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998)). Willfulness can be satisfied when a defendant does not contest that he "received the complaint" or "that his non-compliance was due to circumstances beyond his control." *Id.* Importantly, "'the relevant inquiry for determining willfulness is the defaulting party's actions after it became aware of the existence of the litigation or entry of default.'" *Haran v. Orange Bus. Servs. Inc.*, No. 21-CV-10585 (VSB),

2022 WL 2306945, at *2 (S.D.N.Y. June 27, 2022) (quoting *In re FKF 3, LLC*, 501 B.R. 491, 502 (S.D.N.Y. 2013)). Courts can also consider "whether the defendant knew that the plaintiff had a claim against them." *Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 195–96 (S.D.N.Y. 2021) (quoting *Durso v. Modern Food Center, Inc.*, 2019 WL 2150424, at *5 (S.D.N.Y. May 17, 2019)).

Talibov's explanation for the delay satisfies the court. The fact that he knew litigation had been threatened before he left the country – a factor that can, in certain circumstances, support a finding of willful default, *see, e.g., Vertamedia Grp., Inc. v. Patient Conversation Media, Inc.*, No. 15-CV-6281, 2016 WL 7441643, at *3 (E.D.N.Y. Dec. 27, 2016) – that does not mean that Talibov realized that he had been sued. The record reveals that he was out of the country when service was attempted and that he left on a business trip immediately upon his return, and that he did not learn that he had been served with papers until October. Plaintiff offers no evidence to dispute any of that. Talibov's attention to the litigation thereafter is evidenced by his negotiating personally about the discovery subpoena with which Smartist was served shortly after he learned that he had been sued; his prompt provision of documents to an attorney; and his subsequent search for a lawyer who could handle the litigation – which, while it ultimately took several months, was not at all an unreasonable amount of time. Moreover, as soon as Talibov hired counsel, that attorney moved to vacate the entry of default, which suggests that the default was not willful. *Saidnia v. Nimbus Mining LLC*, No. 21-CV-7792 (VSB), 2024 WL 2962628, at *4 (S.D.N.Y. June 11, 2024).

It is, of course, true that a six month delay in responding after a default can support a finding of willfulness. However, under the circumstances, I decline to find that the default was willful.

Moreover, even if the default was willful, I conclude that there is good cause to vacate the entry of default, because Mr. Alizada will not be prejudiced and Mr. Talibov asserts meritorious defenses. *See, e.g., Sea Hope Navigation Inc. v. Novel Commodities SA,* 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013) (vacating an entry of default because although defendant willfully defaulted, defendant presented meritorious defenses and plaintiff would not be prejudiced); *Murphy v. Snyder*, No. CV 10-1513 JS AKT, 2013 WL 934603, at *19 (E.D.N.Y. Mar. 8, 2013), report and recommendation adopted, No. 10-CV-1513 JS AKT, 2013 WL 1335757 (E.D.N.Y. Mar. 29, 2013) (vacating an entry of default because although defendant willfully defaulted, defendant presented meritorious defenses and plaintiff would not be prejudiced).

Prejudice exists when the delay "'may thwart plaintiff's recovery or remedy . . . [or] result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Delay, without more, is insufficient to establish prejudice. *Id.*

Mr. Alizada claimed that he will be prejudiced because of the risk of loss of evidence and greater opportunity for fraud. Pl. Opp'n, 10. He argued that Mr. Talibov has refused to provide Mr. Alizada with the revenues, profits, and other financials for Smartist. *Id.* Mr. Alizada also contended that Mr. Talibov appeared only after Mr. Alizada subpoenaed Smartist on November 28, 2023 and moved to compel discovery sought in the subpoena. *Id.* 10-11. Mr. Alizada also argued that Mr. Talibov changed Smartist's address on the website and subsequently argued that the subpoena was defective under Fed. R. Civ. P. 45(c)(1)(A), on the day that he filed his motion to vacate the entry of default; these actions demonstrate "a willingness to take advantage of the delay [Mr. Talibov] caused to alter and conceal evidence." Pl. Opp'n, 11.

However, the delay will not likely result in the loss of evidence or provide greater opportunity for fraud. Mr. Talibov contended that Mr. Alizada sought that information before the lawsuit was commenced and that he was under no obligation to provide Mr. Alizada that information at that time. Def. Reply, 3. The address update reflects a correction rather than an attempt at fraud; both parties agree that Mr. Talibov operates Smartist from his residence in Miami. Compl., ¶9; Answer, ¶9. Alizada's assertion that any of this means that evidence is being or has been destroyed is purely conjectural on his part; moreover, if it should turn out that evidence was destroyed after Alizada threatened suit, the proper remedy is a sanction – not a default judgment. As for his contention that he was prejudiced by having to spend time and attorney's fees to prepare a third party subpoena to be served on Smartist, Inc., Alizada makes no showing that he would not have incurred exactly the same expenditure of time and money to direct discovery requests to Smartist in the context of a contested proceeding; because he has already delivered a discovery request to the corporation (to which there may already have been a response), Alizada is that far ahead of the game.

Talibov also asserts non-frivolous defenses to the complaint. A defense is meritorious "if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co.*, 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). "The test of [] a [meritorious] defense [within the context of vacatur of the entry of default] is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98 (2d Cir. 1993).

Mr. Talibov asserts meritorious defenses to all three asserted claims. Insofar as the breach of contract claim is concerned, the parties hotly contest many of the facts, including whether any

contract exists and what the terms of the alleged partnership were. The unjust enrichment and fraud claims are likely barred as a matter of law if Alizada can prove that there was a contract governing the parties' relationship; and should Alizada's breach of contract claim fail, his alternative claim of unjust enrichment is likewise dependent on the resolution of numerous disputed issues of fact. In short, Talibov has easily satisfied the "meritorious defense" requirement.

Equities also favor vacating the default. Mr. Alizada seeks a default recovery in the amount of $1,800,000.00 for an investment of allegedly $20,000. Moreover, Talibov asserts that he spent significant time and money developing this app on his own, such that Alizada's investment was insignificant. Granting the motion for a default judgment could lead to an excessive damages award, which would be an unduly harsh result. *See Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)[1]("In addition, the court could have considered whether the entry of default would lead to a harsh result or to the entry of a large money judgment.").

In sum, there is simply no reason to allow this hotly contested matter to proceed as though there had been a willful default of long standing. The motion to vacate the default judgment is GRANTED and the Clerk's Certificate of Default is VACATED.

Because the court is granting the motion to vacate the default, the defendant must be given time to file an answer. In this case, Talibov has already filed his answer; it accompanied his motion to vacate the default. The court deems the time to file an answer extended as a necessary adjunct of granting the motion to vacate and accepts the answer that was filed along with the motion.

Mr. Alizada argued that Mr. Talibov's late answer should not be accepted for failure to follow procedure under Fed. R. Civ. P. 6(b)(1)(B), under which a party seeking to file a late answer must first seek leave of the Court. Fed. R. Civ. P. 6(b)(1)(B) states, "When an act may or must be

---

[1] That said, I note that the matter would have to be set down for inquest into damages, which would no doubt be a contested proceeding.

done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, Talibov moved to both vacate the entry of default against him and enlarge his time to file an answer because of excusable neglect. The rule does not preclude the concurrent filing of the answer with the motion; indeed, that is the better course, since by filing his proposed answer, Talibov was able to satisfy the court that he would assert potentially meritorious defenses. Moreover, it would essentially negate the vacatur of the default if the court were not to allow Talibov to file an answer. Since the court has found good cause to vacate the default, I have little choice but to allow an answer to be filed so that we can continue to litigate this case on the merits.

### Conclusion

Mr. Talibov's motion to vacate the entry of default and to enlarge his time to file an answer is GRANTED. A Rule 16 conference will be scheduled if the parties cannot agree on a consent scheduling order.

This constitutes the decision and order of the court. It is a written decision. The Clerk is directed to remove the motion at Docket #30 from the court's list of open motions.

Dated: August 6, 2024

_____

U.S.D.J.

BY ECF TO ALL COUNSEL